UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LAURA ZILIOLI,                                               **FIRST AMENDED COMPLAINT**

                                                  **15 CV 2376 (GHW)**
                                                  **ECF Case**

                Plaintiff,
     vs.

The CITY OF NEW YORK,
NEW YORK CITY DETECTIVES
EDRIAN IRIZARRY, Shield 6201
TARAH BARRETT, Shield 2277,
EMERITO DEJESUS, Shield 7309,
JANE DOE, and SERGEANT
JUAN ORTIZ, Shield 5606,
in their individual and official capacities,
                                                  **JURY TRIAL DEMANDED**

                Defendants.
-----------------------------------------------------------x

Plaintiff Laura Zilioli, by her attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This civil rights action arises from the unlawful search, false arrest, and malicious prosecution of Laura Zilioli ("Plaintiff") at the hands of NYPD Narcotics Detectives, who baselessly searched Plaintiff and fabricated criminal charges against her. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for unlawful search, false arrest and imprisonment, malicious prosecution, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

4.   Plaintiff respectfully demands a trial by jury on each and every one of her claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.   Plaintiff Laura Zilioli is a United States citizen and at all relevant times a resident of the City of New York, State of New York.

7.   The individually named defendants Detective Tarah Barrett (Shield # 2277) ("Det. Barrett"), Detective Edrian Irizarry (Shield # 6201) ("Det. Irizarry"), Detective Emerito DeJesus (Shield No. 7309) ("Det. DeJesus"), Detective Jane Doe ("Det. Jane Doe"), and Sergeant Juan Ortiz (Shield # 5606) ("Sgt. Ortiz") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8.   On the date of the incident giving rise to this complaint, the individual defendants were assigned to the Narcotics Borough Manhattan South.

9. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## STATEMENT OF FACTS

11. On April 2, 2014, around 4:00 PM, Plaintiff was with two friends – Frank Mona ("Mr. Mona") and Shawn Beverly ("Mr. Beverly") – eating take-out food from Empanada Mama ("the Restaurant"), located at 763 9th Avenue in Manhattan, New York City.

12. Plaintiff, Mr. Beverly, and Mr. Mona were eating inside a Lexus sedan ("the Lexus"), driven by Mr. Mona, which was lawfully parked outside the Restaurant.

13. Nothing unlawful or suspicious took place in the Lexus. Plaintiff sat eating in the back seat, while Mr. Mona ate in the driver's seat and Mr. Beverly ate in the front passenger seat.

14. After eating and talking for a while, Plaintiff had to leave and go downtown to 14th Street. As she left the car, she took a cigarette from Mr. Beverly and took her purse ("the Purse"), leaving nothing behind in the Lexus.

15. Plaintiff walked south toward the subway station at 42nd Street. After a few blocks, Det. Barrett and Det. Jane Doe suddenly stepped in front of Plaintiff and identified themselves as Narcotics officers.

16. Det. Barrett and Det. Jane Doe asked a series of questions, as if Plaintiff had done something wrong. "What did you just throw?" they asked. "My cigarette," Plaintiff responded. "Who were those two guys you were with?" they asked. "Excuse me?" Plaintiff responded, completely baffled by the interrogation. Plaintiff asked if she was being arrested and she was told "no."

17. Det. Barrett and Det. Jane Doe asked to look through the Purse, but Plaintiff said "no." Det. Barrett and Det. Jane Doe ignored Plaintiff's response, however, and grabbed the Purse and rummaged through it, finding nothing unlawful or suspicious.

18. Det. Barrett and Det. Jane Doe then told Plaintiff that their "Chief" wanted to speak to her, and they ordered Plaintiff to walk with them. Det. Barrett and Det. Jane Doe escorted Plaintiff to the Lexus, still parked outside the Restaurant, where Mr. Beverly and Mr. Mona now stood outside the car, handcuffed behind their backs.

19. Given the Purse by Det. Barrett, Sgt. Ortiz and the male detectives at the scene – including Det. Irizarry and Det. DeJesus – looked through the Purse, finding nothing incriminating or unlawful.

20. After conferring with his crew of narcotics detectives, Sgt. Ortiz ordered the arrest of Plaintiff. Plaintiff was handcuffed behind her back and patted down; nothing unlawful or suspicious was recovered from her.

21. Plaintiff was initially placed in a NYPD van with other males, but Plaintiff was eventually taken out of the van and placed in an unmarked police car, at which point Plaintiff was searched again.

22. Plaintiff was driven to the 18th Precinct ("the Precinct"), located at 306 West 54th Street in Manhattan, where Plaintiff was processed, fingerprinted, and photographed.

She was searched again, thoroughly, forced to shake her breasts, take off her shoes and socks, and unfurl her hair, to prove no contraband was hidden. Nothing was recovered.

23.     At the Precinct, and on the way to the Precinct, the individual defendants collaborated and concocted false charges against Plaintiff to justify their false arrest and unlawful searches. To ensnare Plaintiff, they decided to simply make up the fact that a drug pipe was found in her purse.

24.     After several hours in the Precinct's holding cells, Plaintiff was taken to Central Booking in lower Manhattan, 100 Centre Street, where she was caged in more holding cells.

25.     On the evening of April 3, 2014, Plaintiff was arraigned in New York County Criminal Court ("the Court") on Docket Number 2014NY026272. Plaintiff was charged with one count of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of New York Penal Law Section 220.03.

26.     According to the Criminal Court Complaint ("the Complaint"), Plaintiff unlawfully possessed a controlled substance on "April 2, 2014 at about 5:15 PM, at 763 9th Avenue in the County and State of New York."

27.     The Complaint was composed of mendacious allegations by Det. Barrett. Specifically, Det. Barrett states in the Complaint: "[t]he factual basis for this charge is as follows: I observed defendant [Plaintiff] and two separately charged individuals, Frank Mona…and Shawn Beverly…inside a car together.... I then observed defendant go out of the vehicle. In a search incident to the arrest of Mona and Beverly, Detective Izquiatty [sic] recovered from inside a purse in the rear passenger seat next to where defendant had been sitting a methamphetamine pipe with residue…. I am further informed by Detective

Irizarry that he observed a pipe used to smoke methamphetamine in plain view on the center counsel [sic] of the car, and he removed from Mona's person and from where Beverly had dropped it on the floor of the front passenger seat a cigarette box containing methamphetamine."

28.     In fact, Plaintiff did not have any pipe in her purse or anywhere else on her person, and there was no pipe in plain view.

29.     Det. Barrett signed her name beneath her false statement and beneath a bold warning that "False statements made in this written instrument are punishable as a class A misdemeanor..."

30.     Plaintiff was released on her own recognizance, ending around twenty-four hours of unlawful detention, but she was ordered to return to Court on May 7, 2014.

31.     Plaintiff appeared in Court on May 7, 2014, and her case was dismissed and sealed that day on the motion of the New York County District Attorney.

32.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

33.      There is a systemic failure to identify, discipline, and supervise NYPD officers and detectives who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

34.     The NYPD's flaccid response to lying officers and detectives – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

35. Proportionate and appropriate discipline sends a message to NYPD employees that they are not above the law and are accountable to the people whom they serve. But when it comes to making false statements on court documents, NYPD officers and detectives virtually never face serious discipline.

36. The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents. Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

37. The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

38. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

    a. Violation of her constitutional rights under the Fourth Amendment to the United States Constitution;

    b. Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

### FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

39. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

40. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

41. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

42. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

43. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Illegal Search Under Section 1983

44. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

45. By the actions described, the Defendants deprived Plaintiff of her Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically her right to be free from unlawful searches.

46. Without probable cause, a warrant, or consent, the individual defendants searched through Plaintiff's purse and body, where Plaintiff had an expectation privacy.

47. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### False Arrest Under Section 1983

48. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

49. By the actions described above, Defendants deprived Plaintiff of her federal civil rights, including her Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically her right to be free of false arrest.

50. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

51. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### FOURTH CLAIM

### Malicious Prosecution Under Section 1983

52. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

53. By the actions described, the Defendants deprived Plaintiff of her Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically her right to be free from malicious prosecution.

54. Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt, providing a mendacious complaint to the New York County District Attorney.

55. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### FIFTH CLAIM

### Failure to Intervene Under Section 1983

56. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

57. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights by other law enforcement officers.

58. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of her constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

59. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Municipal Liability Under Section 1983

60. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

61. By the actions described, the Defendant City deprived Plaintiff of her Fourth Amendment right to be free of false arrest, malicious prosecution, and illegal searches through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

62. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a.    An order awarding compensatory damages for Plaintiff Laura Zilioli in an amount to be determined at trial;

    b.    An order awarding punitive damages in an amount to be determined at trial;

    c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

    d.    Such other and further relief as this Court may deem appropriate.

DATED:    July 21, 2015    _____s/_____
    New York, New York    CYRUS JOUBIN, ESQ.
    88 Pine Street, 14th Floor
    New York, NY 10005
    (703) 851-2467
    joubinlaw@gmail.com
    Attorney for Laura Zilioli